IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON AARON LANSDOWNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 11-487 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 17th day of September, 2012, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, granted, and the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, denied. The Commissioner's decision dated March 2, 2009, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to

such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), quoting, Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed. . . .'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), quoting, Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979). These well-established principles require that this case be remanded for further proceedings because the ALJ's analysis at step 3 of the sequential evaluation process is lacking.

Plaintiff filed his pending applications[1] for benefits on December 21, 2007, alleging a disability onset date of January 31, 2006, due to a learning disorder, anxiety and depression.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and has acquired sufficient quarters of coverage to remain insured only through December 31, 2010.

Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on November 26, 2008, at which plaintiff, represented by counsel, appeared and testified. On March 2, 2009, the ALJ issued a decision finding that plaintiff is not disabled. On February 9, 2011, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 32 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c) and 416.963(c). He has at least a high school education and has past relevant work experience as a parking lot attendant, bagger and stocker, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of low back pain, a history of plantar fasciitis, borderline intellectual functioning, anxiety, depression and compulsive lying, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ found that plaintiff retains the residual functional capacity to perform a range of medium work but with numerous restrictions recognizing the limiting effects of his impairments.

Specifically, plaintiff must avoid dangerous machinery, and is limited to simple, routine, repetitive tasks, not involving a fast pace or more than few workplace changes, and involving only simple decisions in a low-stress environment with only occasional interactions with co-workers and supervisors. (R. 53).

Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including dryer attendant and washer. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform his past relevant work, he is capable of making an adjustment to jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a

claimant is under a disability.[2] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

In this case, plaintiff challenges the ALJ's step 3 finding that he does not have an impairment, or combination of impairments, that meets or medically equals any listing. Specifically, plaintiff alleges that the evidence of record establishes that he in fact meets the listing for mental retardation at §12.05 under either paragraph B or C of that listing and that the ALJ erroneously found that plaintiff also had to meet the introductory criteria to Listing 12.05. Although the court agrees with the ALJ that plaintiff was required to meet the introductory criteria of Listing 12.05, because the court finds that the ALJ did not adequately explain the methodology he utilized in determining that plaintiff does not meet those introductory criteria, this case will be remanded to the Commissioner for further proceedings.

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Admin., 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education or work experience, from performing any gainful activity. 20 C.F.R. §416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). "If the impairment is equivalent to a listed impairment, then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

The criteria for meeting Listing 12.05 are as follows:

> 12.05. Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;

* * *

> C. A valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05(emphasis added).

Here, the ALJ found that plaintiff does not meet Listing 12.05 because he "has failed to prove the existence of deficits in adaptive functioning prior to attaining age 22". (R. 51). In making this finding, the ALJ noted that there is "no indication that [plaintiff's] major motor and language milestones were not attained" and he identified a number of other factors in the record including, *inter alia*, that plaintiff completed high school through special education classes, that he "has compiled a quite satisfactory work history since at least 1997," that he has a driver's license, plays cards, communicates via e-mail, uses public transportation and can calculate bus fare. (R. 51). From this evidence, the ALJ concluded that plaintiff failed to establish "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before age 22)" as required under the introductory paragraph of Listing 12.05. (R. 51).[3]

---

[3] Because the ALJ concluded that plaintiff did not meet the criteria of the introductory paragraph to Listing 12.05, he did not analyze whether the paragraph B or C criteria of that listing are satisfied.

As an initial matter, the court will address plaintiff's argument that the ALJ erroneously concluded that Listing 12.05 requires him to prove the existence of deficits in adaptive functioning as set forth in the introductory paragraph to that listing. Instead, plaintiff's position is that all he has to show to meet Listing 12.05 is that he meets either the B or C criteria of that Listing and that his mental retardation manifested itself before age 22. The court disagrees because plaintiff cannot show "mental retardation" without showing "significantly subaverage general intellectual functioning with deficits in adaptive functioning", the very definition of "mental retardation" in Listing 12.05.

Plaintiff's counsel has raised this identical argument to this court before, most recently in <u>Grunden v. Astrue</u>, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011). Therein, this court rejected the argument and concluded that, in addition to the criteria of at least one of the A through D paragraphs, a claimant must also meet the introductory criteria of Listing 12.05 which requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., ... onset of the impairment before age 22." This conclusion is in full accord with both the Regulations themselves and the case law of this circuit.

As noted in <u>Grunden</u>, in order for a claimant's impairment to meet a listing, it must satisfy <u>all</u> of the specified criteria of the listing at issue. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530

(1990); 20 C.F.R. 416.925(d)("To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies all of the criteria of the listing.").

Moreover, the requirement that plaintiff must meet the introductory criteria to §12.05 clearly and unequivocally is stated in the explanatory notes to the mental disorder listings:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. (emphasis added).

The United States Court of Appeals for the Third Circuit likewise has held on several occasions that a claimant must satisfy the requirements of the introductory paragraph of Listing 12.05. <u>See</u>, <u>Gist v. Barnhart</u>, 67 Fed. Appx. 78, 81 (3d Cir. 2003)("[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); <u>Cortes v. Commissioner of Social Security</u>, 255 Fed. Appx. 646, 651 (3d Cir. 2007) (to meet the listing for mental retardation, the claimant must prove, *inter alia*, "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22).[4]

---

[4] As in <u>Grunden</u>, plaintiff's counsel relies on <u>Markle v. Barnhart</u>, 324 F.3d 182 (3d Cir. 2003), wherein it was held that in order to meet

Accordingly, this court reiterates its previous holding in Grunden that, pursuant to the Regulations and case law, in order to meet Listing 12.05, a claimant must meet both the introductory criteria to that listing requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]" and the criteria of one of paragraphs A through D.

Having concluded that the ALJ was correct in requiring plaintiff to meet the introductory criteria of Listing 12.05, the court must next consider whether the ALJ's finding that plaintiff does not meet that criteria is supported by substantial evidence. As in Grunden, because the court cannot meaningfully determine the ALJ's basis for concluding that plaintiff does not meet the requirement of deficits in adaptive functioning prior to age 22,

---

the requirements of §12.05C, a claimant "must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." Id. at 187. Although not specifically mentioning the need to establish "deficits in adaptive functioning," Markle did expressly hold that a claimant must show "mental retardation" manifested before age 22, and Listing 12.05 explicitly states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning." Accordingly, it is this court's interpretation that Markle is wholly consistent with the subsequent decisions in Gist and Cortes, as well as with the clear and unequivocal pronouncement made in the explanatory notes to the mental disorder listings in 12.00A. Moreover, to the extent plaintiff suggests that this court held to the contrary in Airgood v. Astrue, 2010 WL 170404 (W.D. Pa. Jan. 13, 2010) and Miller v. Barnhart, CV 04-660 (W.D. Pa., August 22, 2005), this suggestion is inaccurate, since whether the claimants had deficits in adaptive functioning was not the issue before the court in either of those cases. Morever, in Miller, the court specifically directed the ALJ on remand to evaluate the evidence and to determine whether the plaintiff had significantly subaverage general intellectual functioning manifesting itself before the age of 22 as required to meet the introductory criteria to Listing 12.05.

this case must be remanded to the ALJ for additional evaluation. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (requiring the ALJ to sufficiently explain his findings to permit meaningful review).

The Regulations do not define "deficits of adaptive functioning", nor do they identify guidelines by which to assess the existence or severity of a claimant's alleged deficits. Logan v. Astrue, 2008 WL 4279820 at *8 (W.D. Pa. Sept. 16, 2008)(D.J. Fischer). Nor is there any case law in this circuit that addresses this issue. Id. However, as Judge Fischer aptly noted in Logan, the Social Security Administration ("SSA") has issued a regulation entitled "Technical Revisions to Medical Criteria for Determinations of Disability", 67 FR 20018-01 (April 24, 2002), to provide guidance on the matter.

In that regulation, the SSA explained why it had chosen to draft the capsule definition of mental retardation in Listing 12.05, *i.e.*, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]." Logan, 2008 WL 4279820, at *8. Rather than merely adopt the definition of mental retardation found in the American Psychiatric Association's ("APA") Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), the SSA considered the different definitions utilized by each of the major professional organizations in the United States that deal with mental retardation, including the APA and the American Association on Mental Retardation ("AAMR") (now known as the American

Association on Intellectual and Developmental Disabilities). Id. These various definitions all require significant deficits in intellectual functioning, but differ as to the age of onset and the method of measuring the required deficits in adaptive functioning. Id.

The SSA clarified that it did not seek to endorse the methodology of one professional organization over another, and would allow use of any of the measurement methods endorsed by one of the professional organizations. Id. According to the SSA, to assess a claimant's alleged mental retardation to determine if deficits in adaptive functioning exist, an ALJ should consult either the APA's DSM-IV, the standard set forth by the AAMR or the criteria of the other major professional organizations that deal with mental retardation. Id.

In this case, it is not clear from the ALJ's decision which organization's standard for measuring deficits in adaptive functioning, if any, he consulted in concluding that plaintiff does not have "deficits in adaptive functioning." Although the ALJ set forth a number of factors which he considered in support of his conclusion, e.g., that plaintiff completed high school through special education classes, that he "has compiled a quite satisfactory work history since at least 1997," that he has a driver's license, plays cards, communicates via e-mail, uses public transportation and can calculate bus fare, the court nevertheless is left to guess as to which standard the ALJ employed in his analysis.

Thus, because the ALJ's assessment of whether plaintiff has "deficits in adaptive functioning" fails to comply with the SSA's directive in <u>Technical Revisions to Medical Criteria for Determinations of Disability</u>, remand is required for reconsideration of whether plaintiff has established deficits in adaptive functioning prior to age 22. On remand, the ALJ must identify and apply one of the four standards of measurement used by one of the professional organizations in making this determination and must explain his rationale for whether or not plaintiff meets the introductory criteria of 12.05 under the chosen standard.

Should the ALJ determine that plaintiff has established the requisite deficits in adaptive functioning before age 22 under one of the approved standards, he must then consider whether plaintiff meets the criteria of either paragraph B or C of Listing 12.05. As already noted, the ALJ did not analyze whether plaintiff meets the criteria of either Listing 12.05B or 12.05C in this case because he found that plaintiff does not meet the introductory criteria.

Plaintiff contends that he meets Listing 12.05B[5] because the record contains evidence of a May 1992 performance IQ of 49, when

---

[5] In order to meet Listing 12.05B, plaintiff need only show a valid verbal, performance or full scale IQ of 59 or less. The Regulations only require that one of those IQ scores be 59 or less. <u>See</u> §12.00D.6.c. ("...where verbal, performance, and full scale IQs are provided ... we use the lowest of these in conjunction with 12.05"); <u>see also</u> <u>Markle</u>, 324 F.3d at 186 (recognizing that the lowest of three IQ scores is to be utilized in making a determination under §12.05).

plaintiff was 15 years old. (R. 154; 167-68). He also asserts that he meets Listing 12.05C[6] because the record also contains a more recent IQ test which resulted in a performance IQ score of 65 (R. 153) and his other severe impairments of low back pain, a history of plantar fasciitis, anxiety, depression and compulsive lying impose additional and significant work-related limitations of function.

While the record does contain IQ scores suggesting that plaintiff may meet the criteria of one or both of 12.05B or 12.05C, the ALJ did point out in his decision that a consulting psychologist had "noted the discrepancy between two of the claimant's IQ scores and had commented that [he] presented an unusual profile." (R. 51.).

It is unclear from this statement if the ALJ was rejecting the validity of one or both of the IQ scores relevant to Listing 12.05B and 12.05C. While it is true that an ALJ is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record, Markle, 324 F.3d at 186, neither may "[a]n ALJ ... reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record."

---

[6] In order to meet Listing 12.05C plaintiff must have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Again, the Regulations only require that one of the three IQ scores be in the 60 through 70 range. See §12.00D.6.c; Markle, 324 F.3d at 186. Moreover, under the regulations, the second prong of 12.05C is satisfied by a finding that the "other" impairment is "severe" within the meaning of step 2 of the sequential evaluation process. See Markle, 324 F.3d at 186; 20 C.F.R. §§404.1520(c) and 416.920(c); 65 Fed. Reg. 50746, 50772 (August 21, 2000).

Morales, 225 F.3d at 318. Thus, if the ALJ should determine on remand that plaintiff has met the introductory criteria of Listing 12.05, he also specifically must consider the requirements of both 12.05B and 12.05C and determine the validity of the IQ scores set forth in the record, and must explain his reasons for rejecting any score he may deem invalid.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Albert Schollaert
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219